EAGLE'S NEST LIMITED PARTNERSHIP, a Limited Partnership, and CHARLES KETCHAM, Appellants and Cross-Respondents, v. EVERETT S. M. BRUNZELL, Respondent and Cross-Appellant.

No. 14000

September 27, 1983          669 P.2d 714

---

*Robison, Lyle, Belaustegui & Robb,* Reno, for Appellants/ Cross-Respondents.

*Hill, Cassas, deLipkau & Erwin,* Reno, for Respondent/ Cross-Appellant.

## OPINION

*Per Curiam:*

The instant dispute between appellant/cross-respondent property owner Eagle's Nest Limited Partnership (Eagle's Nest) and respondent/cross-appellant contractor Brunzell arose after difficulties developed in the course of Brunzell's construction of condominiums ordered by Eagle's Nest.

In 1977, Eagle's Nest and Brunzell agreed that Brunzell

would construct the condominiums in question using a new technique known as the "Wham-T" system. This Wham-T system was a new construction method which utilized large precast concrete forms poured directly at the job site. If this system was effectively utilized considerable savings could be realized, because massive concrete forms did not have to be transported to the job site. In order to realize the savings possible through the use of this method, however, an appropriate number of Wham-T molds had to be available on the job site during the course of construction. These molds could only be obtained from the Wham-T parent distributor, and it was the contractual responsibility of Eagle's Nest to provide an appropriate number of molds.

During the course of construction, difficulties arose in the operation of the Wham-T molds which resulted in substantial delays in construction. A witness for Brunzell testified that at least two large Wham-T molds would have been required to bring the job in on time. However, Eagle's Nest provided only one large and one small mold. Further, mechanical difficulties with the small mold prevented Brunzell from using that piece of equipment at normal or expected rates of production.

As a result of delays incurred due to the difficulties with the molds, the project was completed late in 1979, several months later than anticipated. Brunzell subsequently brought an action against Eagle's Nest to recover the additional costs and expenses incurred due to this delay. The main factual issue presented at trial was whether the use of the Wham-T system resulted in delays which were not contemplated by the parties. The district court found that Brunzell had bid on the job on the assumption that Eagle's Nest would provide an appropriate number of molds, but that Eagle's Nest had failed to provide sufficient molds for the contractor to bring the job in on time. The district court accordingly found that Eagle's Nest had caused substantial delays in the completion of the project, and that under an "equitable adjustment" provision of the contract between Eagle's Nest and Brunzell, Eagle's Nest was liable for the extra costs which were incurred. The district court entered judgment in the amount of $544,386.78 for Brunzell, and this appeal followed.

## EQUITABLE ADJUSTMENT

On appeal, Eagle's Nest first argues that the district court erred in ruling that Brunzell was entitled to an equitable adjustment under the contract. This contention is without merit. We initially note that neither party to this appeal appears to contest the district court's finding that delays occurred in the course of

construction, and that these delays were caused in large part by the failure of Eagle's Nest to deliver the appropriate number of molds to the construction site.

Instead, appellant Eagle's Nest argues that the district court erred because it failed to recognize that Brunzell failed to comply strictly with a contractual provision which established specific methods and procedures to be followed if the contractor wished to make a claim for an increase in the contract price. Eagle's Nest maintains that because Brunzell failed to comply with this provision, the contractor may not later claim an increase in the agreed contract price.

The provision in question, Section 9.2.1 of the construction contract, established a procedure by which Brunzell could seek an adjustment in the guaranteed maximum contract price. That section provided:

> *If the contractor wishes to make a claim for an increase in the Guaranteed Maximum Price, or increase his Fee or an extension of the Contract Time Schedule, he shall give the Owner written notice thereof within a reasonable time after the occurrence of the event giving rise to such claim.* This notice shall be given by the Contractor before proceeding to execute the Work, except in an emergency endangering life or property in which case the Contractor shall act, at his discretion, to prevent threatened damage, injury or loss. *Claims arising from the delay shall be made within a reasonable time after delay. . . . No such claim shall be valid unless so made. . . . Any change in the Guaranteed Maximum Price, the Contractor's Fee or Contract Time Schedule resulting from such claim shall be authorized by Change Order.*

(Emphasis added.)

It is clear from the contractual language used that this notice and claim provision was material to the parties. The issue presented is whether the district court erred in finding that Brunzell complied with this material notice and claim provision. The district court ruling that the notice and claim provision had been complied with was based on a letter sent by Brunzell to appellant some time after the contractor began experiencing mechanical problems with the small Wham-T mold. That letter provided, in pertinent part:

> We are currently being delayed as a result of misalignment and unworkability of certain parts within the small Wham-T mold (affectionately called Rusty Dusty by its Maker). This equipment was damaged in transit and has

undergone considerable repair and modification since being shipped to the jobsite. Major repairs have been made as directed by "Wham-T" however, this work has not completely resolved this problem since the rear door closing jacks are still inoperative. Due to this and other problems we have not benefited from having this mold. We have not been able to doordinate [sic] its use with the large mold, consequently have had to bear the additional cost for lifting and erection of poured units after our equipment has moved to a different location.

For example, the large "Wham-T" molds for building No. 3 are almost finished yet due to breakdown we have only poured one small mold at this time. This will necessitate moving the crane and labor back to Building 3 site when the molds poured in "Rusty Dusty" are available. We do not believe we should be responsible for the resultant extra costs. Accordingly, it is our intent to submit our billing to you at a later date.

We trust you will consider this matter favorable in the light of the circumstances known to you.

The district court ruled this letter gave sufficient notice of additional costs and expenses which Brunzell later detailed in a "Change Order 19." These additional charges and expenses totaled $380,537.09.

The letter clearly indicated that Brunzell was "being delayed" as a result of difficulties caused by mechanical problems with one of the Wham-T molds. Further, the letter indicated that the contractor disclaimed any liability for the resulting extra costs, and intended to bill Eagle's Nest at a later date. The letter thus provided some notice that Brunzell was incurring additional costs, for which the contractor expected to recover from Eagle's Nest. The question presented is whether the district court correctly found that the letter provided sufficient notice to comply with the requirements of Section 9.2.1.

We believe that the letter did provide sufficient notice, and that the district court did not err in finding that Brunzell had complied with Section 9.2.1. Section 9.2.1 provides that "[c]laims arising from the delay shall be made within a reasonable time after delay." Appellant apparently would interpret this provision to require Brunzell to prognosticate in some fashion all delay costs before they had been incurred. However, we believe that under the circumstances presented in this case appropriate notice might consist of an initial notice that difficulties had arisen, to be followed by a detailed statement of

the extra costs incurred when those costs could be determined with sufficient accuracy. Brunzell's letter that he was having trouble with the molds clearly provided appellant with warning that the contractor was experiencing overruns and additional costs, and gave Eagle's Nest the opportunity to take appropriate remedial measures.

Further, the question of notice raised by appellant must be considered in light of the specific circumstances of this case. Appellant's representative shared an office on the construction site with the contractor, and was well aware of the difficulties which arose during construction. The Brunzell letter impliedly makes reference to the representative's knowledge of the problems the contractor was encountering; the letter closes: "We trust you will consider this matter favorably in light of the circumstances known to you." Given that appellant was aware that Brunzell was experiencing difficulties and additional costs for which he expected to be compensated, we do not believe the district court erred in ruling that the letter provided sufficient notice to meet the requirements of Section 9.2.1 of the contract. *See, e.g.,* Farnsworth & Chambers Co. v. United States, 346 F.2d 577 (U.S.Ct. Claims 1965) (notice need not be set forth specifically and in detail; notice sufficient if owner knows contractor claiming condition in certain area).

## ESTOPPEL

In addition to the equitable adjustment, the district court also allowed Brunzell to recover for additional cost overruns incurred after the additional charges detailed in Change Order 19 arose. Shortly before these additional costs were incurred, Brunzell and Eagle's Nest allegedly entered into a "cost plus" agreement in an attempt to resolve disputes which had resulted from the delays. Under the terms of this agreement, Brunzell was to receive an amount equal to his costs plus eight percent. This agreement was later modified to provide that the contractor would receive reimbursement for the additional costs incurred, plus a flat profit of $1,000 per week. Brunzell apparently attempted to reduce this to writing in the form of several confirmatory memoranda which were sent to Eagle's Nest. There was no response, but Eagle's Nest subsequently made a $155,000 payment to Brunzell in apparent compliance with this agreement.

The district court refused to enforce this subsequent cost plus agreement, on the ground that it was unenforceable due to lack of consideration. However, the district court ruled that Brunzell had reasonably relied upon the agreement to the extent that the contractor believed that the notice and claim

provisions of Section 9.2.1 would no longer be binding. As a result of Brunzell's reliance, the district court concluded that Eagle's Nest should be estopped from invoking Section 9.2.1 as a defense to payment.

Eagle's Nest now maintains that the district court erred in applying such an estoppel theory, arguing that Brunzell did not demonstrate that he relied on the agreement or that his reliance was reasonable. Appellant's argument is without merit. The record indicates that the district court properly could have found that Brunzell relied on the agreement, even though the contractor's accountant apparently continued to prepare change orders for a period after the cost plus modification was agreed to by the parties. Appellant's argument on this point is apparently premised on a provision in a separate loan agreement which provided that any modification of the construction agreement required the approval of the third party lender. Although Brunzell admitted he was legally bound by the provisions of this loan contract, the contractor stated that he had "counted on the owner" to obtain the necessary approval rather than seeking such approval himself. In that the modification appears to have been the result of mutual discussion and negotiation by Brunzell and Eagle's Nest in an attempt to find a satisfactory solution to a legitimate contract dispute that was potentially damaging to both parties, we are not prepared to say that the district court erred in finding Brunzell's reliance reasonable. Accordingly, we reject this assignment of error.

## BRUNZELL'S CROSS-APPEAL

In addition to the issues raised on appeal by Eagle's Nest, respondent Brunzell presents several contentions on cross-appeal. At least one of these contentions has merit. Brunzell argues that the court erred in failing to award prejudgment interest. As appellant Eagle's Nest expressly concedes, Brunzell is correct. In Paradise Homes v. Central Surety, 84 Nev. 109, 437 P.2d 78 (1968), this court determined that prejudgment interest should be awarded in contract actions from the time the amount in question becomes due. As Brunzell is the prevailing party in this action, the contractor is entitled to prejudgment interest from the time the sums became due.

There remains the question of what represents the appropriate rate of prejudgment interest to be applied in the instant case. Although Brunzell argues that NRS 108.237[1] mandates

---

[1]NRS 108.237 provides:

    1. Any number of persons claiming liens may join in the same

that the contractor recover prejudgment interest at 12 percent per annum, the 12 percent per annum rate set forth in this statute was established by a 1981 amendment and applies only to causes of action which arose on or after July 1, 1981. *See* 1981 Nev. Stats. 1858-1859. However, the record in the instant case indicates that Brunzell was originally entitled to payment in 1979; thus, the contractor's cause of action arose well before July 1, 1981. The contractor is therefore entitled to prejudgment interest at the rate applicable before NRS 108.237 was amended, or seven percent per annum. *See* 1981 Nev. Stats. 1858-1859.

In addition to prejudgment interest, Eagle's Nest concedes that NRS 108.237(3) establishes that Brunzell is also entitled to recover attorney's fees incurred in the instant action. Accordingly, this case is remanded to the district court with instructions that Brunzell be awarded appropriate prejudgment interest in the amount of seven percent per annum pursuant to NRS 108.237, and appropriate attorney's fees.

action. When separate actions are commenced the court may consolidate them.

2. The court may also allow interest at the rate of 12 percent per annum on the amount of the lien found payable, such interest to have been due, and may allow, as part of the costs, the money paid for recording the lien.

3. The court shall also allow to the prevailing party reasonable attorney's fees for the preparation of the lien and for representation of the lien claimant in the action.